## Wabash Railroad Co. v. Robert Smillie.

1. APPELLATE COURT PRACTICE—*Effect of a Verdict Where the Jury Specifies the Counts of the Declaration upon Which They Find.*—When a jury specifies in their verdict the counts of the declaration upon which their finding is based, it is in effect a finding for the defendant on all the other counts, and none but the counts specified will be considered by the Appellate Court in reviewing the case.

2. RAILROADS—*Duty of Persons About to Cross the Track.*—It is as much the duty of a person about to cross the track of a railroad to watch for and see and heed the signals and warnings which he claims in his declaration were not given, if, in fact they were given, as it is the duty to use ordinary care to otherwise ascertain if there is danger in the act of crossing such track at the particular time.

3. SAME—*Keeping a Flagman Will Not Excuse the Want of Ordinary Care.*—The mere fact that a flagman is kept by a railroad company at a crossing in a city, will not alone excuse the want of ordinary care in other respects by a person about to pass over its track, if the circumstances are such that an ordinary person would naturally use his sense of sight and hearing to observe other indications of the approach of a train in the absence of signals by the flagman.

4. EVIDENCE—*When the Issues Are Such as to Require Accurate Rulings.*—In an action against a railroad company for personal injuries, where the issues are such as to require accurate rulings upon the admission of evidence, it is error to permit the plaintiff, over the objection of the defendant, to answer a question in a way that, in effect, puts him into the jury box to decide his own case.

5. PERSONAL INJURIES—*Want of Ordinary Care Precludes a Recovery.*—On the trial of an action against a railroad company for personal injuries received at a street crossing in the city of Springfield, witnesses testified that they saw the train by which the plaintiff was injured approaching at the time of the collision. *It was held*, that if, under the circumstances, the plaintiff, in the exercise of ordinary care for his own safety, upon approaching the crossing ought to have looked for the train but did not, it is to be presumed he would have seen what the others saw, and can not recover.

6. DAMAGES—*Elements of, in Personal Injury Cases—Incapacity to Transact Business.*—An instruction in an action for personal injuries which permits the jury to assess damages sustained by the plaintiff in his business is proper under general averments of the declaration.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1901. Reversed and remanded. Opinion filed September 11, 1901.

C. N. Travous, attorney for appellant; Patton, Hamilton & Patton, of counsel.

McGuire & Salzenstein, attorneys for appellee.

Mr. Justice Wright delivered the opinion of the court.

The declaration of the appellee against appellant alleging negligence of the latter whereby he, the appellee, was injured, contained two counts, to which was afterward added five additional counts. The verdict of the jury specified the first count of the original declaration and the second additional count of the declaration as those upon which the defendant was found guilty, and assessed the plaintiff's damages at $4,000; and the court, after having overruled appellant's motion for a new trial, gave judgment upon the verdict for the amount of the damages so assessed, and to reverse this judgment appellant prosecutes this appeal, and has assigned and argued various alleged errors to effect such reversal, among which are, chiefly, that the court admitted improper evidence for the consideration of the jury, gave improper instructions and refused proper instructions, especially the one offered directing a verdict for the defendant, and that the verdict is contrary to the law and the evidence of the case. The jury having specified in their verdict the counts of the declaration upon which their finding is based is in effect a finding for the defendant on all other counts, and none, therefore, but the first count of the original declaration and the second additional count need to be considered in this opinion. Those counts, in substance, charge that at the crossing of the railroad with Adams street, Springfield, the defendant had been required to, and did, maintain a flagman for a long time prior to the injury, for the protection of persons and property against injury; that it was the duty of defendant to employ and keep a competent and careful man as flagman at such crossing and give notice and warning to persons on foot or in vehicles about to cross there, of the approach of engines and trains, and that while plaintiff, January 8, 1900, was driving in a buggy with due care and caution, toward the cross-

ing, he received no notice or warning from the flagman, in consequence of which he was struck and injured. Also, defendant was backing its train south at a high and dangerous rate of speed toward the crossing without keeping proper watch for persons about to pass or drive over the crossing, or to give such signals as would apprise the person, using due care, of the approach of the locomotive engine and train, by reason of which appellee was injured.

The evidence shows that on the evening in question, January 8, 1900, about half past five o'clock, and when it was dark, while in the act of crossing the railroad at Adams street, appellee was struck by a passenger train backing for the switch to allow another train to pass, and was so injured that he lost a leg. Appellee claimed the flagman gave him no warning of the approach of the train, and that he did not otherwise have knowledge of its approach. The evidence is conflicting upon this point and is neither clear nor satisfactory upon the point of the negligence charged in the counts mentioned in the verdict, nor as to the care of the appellee to avoid injury. It was as much the duty of appellee to watch for, see and heed the signals and warnings he claims by his declaration were not given, if in fact they were given, as it was his duty to use ordinary care to otherwise ascertain if there was danger in the act of crossing at this particular time. The mere fact that a flagman is maintained will not alone excuse want of ordinary care in other respects in the person about to pass over the railroad, if the circumstances are such that an ordinary person would naturally use his sense of sight and hearing to observe other indications of the approach of a train, in the absence of signals from the flagman. Appellee testified—not that he was absent—but that he did not see the flagman, while there is the evidence of several witnesses that whether appellant saw him or not, the flagman vigorously used his lighted lantern in an effort to stop appellee before he reached the crossing, and we feel compelled to the conclusion that the jury were either misled in some way or obtained a misconception of the real issues of the case. At any rate, the

issues were such as required accurate rulings upon the evidence, so that nothing of that nature, improper for their consideration, should be admitted. Over the objection and exception of appellant appellee was permitted to answer this question: "What effect, if any, did the fact have on you that no signals were given, assuming for the purpose of the question that none were given?" Answer: "I supposed there was no danger, of course." This question and answer was, in our opinion, improper, misleading and prejudicial. It would, we apprehend, be a rare instance, if, under any circumstances of a personal injury, were the elements of the imputed negligence put to the injured person in negative form, as was here done, he would not answer the question in the same way. This is in effect putting the witness—and in this case the plaintiff himself—into the jury box to decide the case. And then it is decided minus the element of due care on his own part; for the answer, which also was objected to, implies there was no danger in attempting the crossing because the signals were wanting; when, if the circumstances were such, if he saw the train approaching dangerously near, or might by the use of due care have seen it, and then attempted the crossing, he would be guilty of a breach of ordinary care and could not recover in consequence of his failure to heed the portents of danger open to his own investigation. Neither was it a question what appellee himself supposed as to the danger; but the inquiry should be what an ordinary person under similar conditions, when in the exercise of ordinary care, would suppose, and this was for the jury to decide, and not for the witness. This point is made clear and potent, when it is considered that every witness in the case who testified that he looked to the north at all, at this critical juncture saw the train backing down to the crossing. If, therefore, under the circumstances, appellee ought to have looked, in the use of due care, and he says he did not look in that direction, and it is to be presumed he would have seen what others saw, then he could not recover, and the question and answer, with the objections and exceptions thereto, we think effectively led

the jury away from a proper consideration of this point. There was no dispute concerning the obligation of appellant to maintain a flagman at this crossing, for it had assumed to do so, thereby admitting its necessity; and therefore the admission of the order of the city council requiring it was harmless.   It was probably immaterial.

Some criticism has been made of the instructions in the case and it would be unusual if some slight inaccuracies did not creep into them, but we are inclined to the opinion that there was no prejudicial error in that respect.   It is said that the fourth instruction permitted the jury to assess damages sustained by plaintiff in his business when the declaration claims no such damages.   In view of the damages returned by the jury we have no doubt they understood the instruction that if by reason of the injury the plaintiff was incapacitated from transacting his business, such condition might be considered in estimating damages, and this, we think, might be done under the general averments of the declaration.   The instruction, however, is not apt in its expression in this respect, and might be misleading, although in this instance we do not think it did mislead the jury. We would be better satisfied with the instruction had this clause been stricken out or modified.

For the error indicated the judgment of the Circuit Court will be reversed and the cause remanded.