## Pennsylvania Railroad Company, Appellant, v. Emmett Gavin, Appellee.

1. EVIDENCE—*freight bills partly filled out from waybill as original copies.* In an action under the Federal Employers' Liability Act, Cahill's Ill. St. ch. 114, ¶ 321 et seq., to recover damages for personal injuries sustained when a safe fell upon plaintiff, wherein it appeared that plaintiff was a trucker in defendant's warehouse and at the time of the accident was assisting in moving the safe to a truck of a transfer company to be transferred to the consignee in another state, held that a freight bill signed by the driver of the truck receiving the safe at the warehouse, and a "wagon ticket" delivered to him at the time, though both were filled out from data obtained from the waybill, were original records, and not copies, and hence admissible in evidence without certification as required by Cahill's Ill. St. ch. 51, ¶ 15.

2. MASTER AND SERVANT—*whether shipment interstate or intrastate as question for jury.* In an action under the Federal Employers' Liability Act, Cahill's Ill. St. ch. 114, ¶ 321 et seq., to recover damages for personal injuries sustained when a steel safe fell upon the plaintiff while assisting in moving it from defendant's warehouse to the truck of a transfer company to be taken to the consignee, held, under the evidence, that the question whether the safe was interstate or intrastate freight was properly permitted to go to the jury.

3. TRIAL—*incorrect statement of court as prejudicial error.* In an action under the Federal Employers' Liability Act, Cahill's Ill. St. ch. 114, ¶ 321 et seq., to recover damages for personal injuries, wherein plaintiff offered to introduce in evidence the *subpœnas duces tecum* served upon certain of the defendant's agents and employees and the court sustained objections to the introduction of the subpœnas, stating that all the files in the case were in evidence, held that, while this statement of the court was not strictly correct, as the record did not show that the subpœnas were read to the jury and did show that they were not taken by the jury to the jury room, no prejudicial error was committed.

4. TRIAL—*comment of attorney on presumption arising from withholding material evidence as reversible error.* Comment of attorney to the effect that it is the law of this state that where a party is in possession of certain evidence material to the issue and does not bring it into court the presumption is that the evidence would have been prejudicial to him, while not approved, held not to constitute reversible error.

5. Instructions—*ignoring assumed risk as a defense under Federal Employers' Liability Act.* In an action under the Federal Employers' Liability Act, Cahill's Ill. St. ch. 114, ¶ 321 et seq., to recover damages for personal injuries, held that error could not be predicated upon the fact that the court in instructing the jury on the subject of defendant's defense under the federal act ignored the question of assumed risk, where there was no question of assumed risk in the case.

6. Instructions—*use of words "Mitigation of damages" instead of "diminished" damages in instruction as prejudicial error.* In an action under the Federal Employers' Liability Act, Cahill's Ill. St. ch. 114, ¶ 321 et seq., to recover damages for personal injuries, held that an instruction of the trial court on the subject of contributory negligence which used the words "mitigation of damages" instead of "diminished" damages as used in the federal act, could not have misled the jury, being so nearly synonymous in meaning.

Appeal by defendant from the City Court of East St. Louis; the Hon. William F. Borders, Judge, presiding. Heard in this court at the March term, 1924. Affirmed. Opinion filed July 7, 1924. Rehearing denied September 17, 1924. *Certiorari* denied by Supreme Court (making opinion final).

Fordyce, Holliday & White and Whitnel, Whitnel & Browning, for appellant.

Louis Beasley and Edward C. Zulley, for appellee.

Mr. Justice Higbee delivered the opinion of the court.

This is an appeal brought by the appellant, Pennsylvania Railroad Company, to reverse a judgment for $9,000.00 in an action on the case entered in the City Court of East St. Louis in favor of appellee, Emmett Gavin. The suit was originally instituted against the Pittsburgh, Cincinnati, Chicago & St. Louis Railroad Company, but appellant was afterwards made defendant and the suit dismissed as to the first defendant. The declaration upon which the case was finally submitted to the jury consisted of three counts. Each of these counts alleged that appellee, while employed by appellant on the 14th day of July,

1923, was injured by a metal safe falling on him at the freight depot of appellant in East St. Louis, and that at the time of the injury both appellant and appellee were engaged in interstate commerce. The negligence alleged in the first count of the declaration was that while appellee and other employees of appellant were engaged in the moving of said safe one of the other employees negligently pushed the safe over upon appellee breaking his right leg between the knee and the ankle. The second count alleged that appellant was negligent in not furnishing sufficient help to handle the safe. The negligence charged, in the third count, was that appellee was without experience in such work and did not realize the danger attendant upon the moving of the safe, but that such danger was known or could have been known to appellant, and that appellee was negligently ordered to use a two-wheel truck instead of a four-wheeled truck. Appellant filed the general issue and special pleas denying that appellant and appellee were at the time of the injury engaged in interstate commerce, and that appellee was injured in any manner while in the employ of appellant.

The evidence shows, and it is not in any manner denied, that at the time of the injury appellant was engaged generally in operating a railroad between East St. Louis, Illinois, and points in New York with a freight house in East St. Louis, Illinois, where appellee was employed by appellant on July 14, 1923, as a trucker in its freight house. The evidence also clearly shows and it is not denied that while engaged with other employees of appellant in moving a safe from this freight house to be loaded upon a transfer wagon or truck, appellee suffered a fractured limb by the safe falling upon him. It appears that appellant's employee, William Flannigan, known as a "checker" had charge of the moving of this safe, and that he

had under him "one picker," Leland Johnson, and "two truckers," appellant and William Anderson.

The first assignment of error argued for the reversal of this judgment is that the proof does not support the verdict and that the court therefore erred in refusing to give appellant's instruction directing the jury to find the issues for appellant. This necessitates the consideration of (1) whether the court erred in not giving this instruction at the close of appellee's testimony, and (2) whether it was error to refuse this instruction at the close of all the evidence. It is insisted by appellant that appellee's testimony did not show that this safe at the time of the injury was being moved as interstate commerce, and that the burden was upon appellee to show that fact, or otherwise he would be bound by the Workmen's Compensation Act [Cahill's Ill. St. ch. 48, ¶ 201 et seq.] of Illinois, and could not maintain this action under the Federal Employers' Liability Act [Cahill's Ill. St. ch. 114, ¶ 321 et seq.]. It is not contested that unless appellee by his own evidence made out at least a prima facie case showing that this safe was at the time of the injury being moved in interstate commerce it was error to refuse the peremptory instruction at the close of appellee's testimony. To prove this fact appellee introduced in evidence plaintiff's Exhibits A and B. Appellant's railroad does not extend into St. Louis, Missouri, and it appears from the evidence that freight consigned over appellant's road to that city is delivered by appellant to transfer companies at its warehouse in East St. Louis, Illinois, for delivery to consignees in St. Louis, Missouri. Plaintiff's Exhibit A is what is termed a freight bill required by appellee to be signed by the drivers of truck wagons receiving freight at its warehouse in East St. Louis for delivery to consignees. Plaintiff's Exhibit B is what is termed a "wagon ticket" which is delivered to the drivers of these trucks at the time they receive freight and ac-

companies the freight. It is contended by appellant that these exhibits were improperly admitted in evidence for two reasons: (1) that the evidence shows that they are copies and not matters of original record and (2) that the evidence does not show that the freight covered by them included the safe which fell upon appellee.

Appellee identified plaintiff's Exhibit A by the witness, Melvin W. Covert, chief clerk of appellant, at its office in East St. Louis. This witness testified that Exhibit A was made in the office of appellant and was the original freight receipt and when introduced in evidence was in the same condition as when made. It is obvious however that the statement that it was in the same condition when introduced in evidence as when made, is not accurate for the reason that when introduced in evidence it contained the signature of Frank Smith, the driver of the truck upon which the freight described therein was loaded at the warehouse, the number of the wagon upon which it was loaded and date of delivery, none of which could have been known before the actual delivery. It also contains the name of the Fidelity Transfer Company, to which Company it was delivered to be conveyed to the consignee. It is not likely that any of these facts were known at the time this freight receipt was originally made out. This witness also testified that said freight receipt was not the waybill, but was copied from the waybill. Upon this testimony appellant bases the contention that this Exhibit was not an original record, but a copy and not certified as required by section 15, chapter 51, Illinois Revised Statutes, Cahill, 1923, and was therefore not admissible in evidence. To this we do not agree, as the meaning of this testimony is, as we view it, that the date which went into this Exhibit as originally made in appellant's office was copied from the waybill but the other matters above mentioned were afterwards entered thereon;

that therefore, while a portion of the contents of this Exhibit was copied from the original waybill yet said Exhibit as testified to by the witness became and was the original freight receipt and was not in any manner a copy.

The same witness also testified that plaintiff's Exhibit B is what is termed a "wagon ticket" and was made in appellant's office from the original freight bill; that when the freight mentioned in such a ticket reaches the freight house the ticket goes with the wagon. This witness also testified that said Exhibit B was copied from the original waybill which in our opinion means simply that the data presented therein by appellant was copied from the freight bill. The witness, Ralph George, testified that on July 14, 1923, he was the traffic manager of the Fidelity Transfer Company; that Exhibit B was a part of the permanent records of that Company, and that he had produced the same in court in response to a *subpœna duces tecum;* that in the regular course of business this Exhibit B or "wagon ticket" was never returned to the Railroad Company. He further testified that this Exhibit contained the identification marks of the Fidelity Transfer Company, its delivery stamp together with its unloading stamp of July 14 on the back, and also the signature of the safe haulers all of which had been placed thereon by the Fidelity Transfer Company, and that otherwise it was in the same condition as when obtained from appellant at the time the freight was delivered to the Fidelity Transfer Company at the warehouse in East St. Louis. While this Exhibit as originally made by appellant contained data copied from the waybill, yet it was in no sense a copy of the waybill, but became and was the original wagon ticket and was a part of the records of the Fidelity Transfer Company and was admissible as an original record.

The second objection of appellant to the admissibility of these Exhibits is that the evidence did not in any way connect them with the transfer of the safe which fell, and this presents a more serious question. These Exhibits show that the freight covered thereby was a steel chest weighing 1430 pounds and other freight consigned by the Herring-Hall-Marvin Safe Company of Hamilton, Ohio, to Howe Scale Company, 514 St. Charles Street, St. Louis, Mo. These Exhibits therefore show upon their face that they covered interstate shipments. Appellee also placed on the stand as a witness William Anderson, who was the other trucker assisting in the moving of the safe at the time of the injury. This witness testified that the safe which fell upon appellee was loaded on a Fidelity Transfer Wagon at door number 17 of appellant's warehouse; that he had worked at the warehouse four months; that the Fidelity Transfer Company loaded freight at any of the doors of the warehouse; that they started to load this safe on a Fidelity Transfer Wagon about twenty or thirty minutes after appellee was hurt. Appellee had served *subpœnas duces tecum* upon certain other officers and employees of appellant to produce in court the records and files showing the shipment of the safe in question. Plaintiff's Exhibit A however was the only such document produced by them and they testified that there were no other matters concerning the shipment of this safe in their possession and no effort had been made to secure them from any other department of appellant than that in which they were severally employed. Appellee offered to introduce said *subpœnas duces tecum* in evidence. The court however after stating that all the court files were in evidence sustained an objection to this offer. This evidence standing alone at the close of appellee's testimony in our opinion made a prima facie case that the safe which fell upon appellee was delivered to the Fidelity Transfer Com-

pany, and that the safe or chest which was delivered to that company was then moving in interstate commerce. This being true so far as that question is concerned appellee had made out a prima facie case, and admitting that the burden was upon him to show that at the time of the injury he and appellant were engaged in interstate commerce, the court properly overruled the peremptory instruction and permitted that question to go to the jury whose province it was to determine that question.

It is next contended by appellant that the court erred in not giving its peremptory instruction offered at the close of all the evidence directing the jury to find in favor of appellant. This instruction, like the similar one offered at the close of plaintiff's case, was based to a very large degree upon the theory that the preponderance of the evidence on the whole case failed to show that the safe which fell on appellee was interstate freight. Evidence was introduced by appellant on this subject which, while not conclusive in determining whether said safe was or was not interstate freight, served to throw the question into some uncertainty.

There was in fact something of a conflict in the proof as a whole as to whether the safe was interstate or intrastate freight. This would appear to have been a matter which could have been readily determined had appellant produced all its files and records bearing on that question as appellee sought to require it to do.

This question was purely a question of fact and under all the proof and circumstances the court properly refused to direct a verdict at the close of all the evidence.

Complaint is also made of the court's remarks and ruling upon appellee's offer to introduce in evidence the *subpœna duces tecum* served upon certain of appellant's agents and employees and of the fact that

attorneys for appellee commented upon appellant's failure to produce the documents called for by these subpœnas. The record shows that the court sustained objections to the introduction of these subpœnas in evidence and stated that all the files in the case were in evidence. This statement of the court was not strictly correct, but the record does not show that these subpœnas were ever read to the jury and does show that they were not taken by the jury to the jury room. The comments of attorneys complained of were to the effect that it is the law of this state that where a defendant is in possession of certain evidence material to the issue and does not bring it into court the presumption is that the evidence would have been prejudicial to defendant. While this statement of attorneys for appellee is not to be wholly approved, yet under the doctrine announced in *Mantonya v. Reilly,* 184 Ill. 183, and *Devine v. Chicago, R. I. & P. Ry. Co.,* 185 Ill. App. 488, it did not constitute reversible error.

It is also insisted that it was error for the trial court to give appellee's instructions 2 and 3. Instruction 2 advised the jury that while the burden was upon appellee to prove he was injured as a result of the negligence charged, yet he was not required to prove such negligence beyond a reasonable doubt, but only by preponderance of the evidence provided the jury also believed from the preponderance of the evidence that at the time of the alleged injury the parties were engaged in interstate commerce, and that at the time of the injury and immediately prior thereto appellee was in the exercise of due care and caution for his own safety. Instruction 3 was to the effect that under the Federal Employers' Liability Act contributory negligence on the part of the injured employee did not constitute a defense to the action, but that such contributory negligence if any, might be shown in "mitigation of damages." The criticism

made of these two instructions is that they ignore the defense of assumption of risk by appellee which defense is allowed appellant under the Federal Employers' Liability Act [Cahill's Ill. St. ch. 114, ¶ 321 et seq.] where the employer has violated some statute enacted for the safety of employees. While the defense of assumed risk, except in the instance above-mentioned, is available to defendant in an action under the Federal Employers' Liability Act, yet an employee under that Act does not assume the risk of injury from negligence of fellow employees. (*Mondou v. New York, N. H. & H. R. Co.*, 223 U. S. 1; *Devine v. Chicago, R. I. & P. Ry. Co.*, supra, and *Mattocks v. Chicago & Alton Ry. Co.*, 187 Ill. App. 529.) Neither does an employee under that Act assume such risks as may be caused by the master negligently failing to furnish suitable appliances to perform his work. (*Gila Valley, G. N. & N. R. Co. v. Hall*, 232 U. S. 94; *Cincinnati, N. O. & T. P. Ry. Co. v. Hall*, 243 Fed. 76, and *Sorenson v. Northern Pac. R. Co.*, 53 Mont. 268.) The declaration charged negligence of fellow employees and also negligence of appellant in failing to furnish sufficient help and proper trucks for the moving of the safe. There was no serious question of assumed risk in the case. In cases of this nature the rule of the Federal Court is that the burden of proof is on the defendant as to the question of assumed risk and if appellant "considered it necessary to have an instruction given to the jury defining assumed risk it was its duty to present one to the court, and it cannot complain because the court did not of its own motion draw and read one to the jury," nor that appellee did not offer such an instruction, nor that all of appellee's instructions did not contain this element. (*Moore v. Wabash Railroad Company*, 299 Ill. 596.) Further complaint is made of instruction 3 in that it used the words "mitigation of damage" instead of "diminished" as used in the statute. These

words are so nearly synonymous in meaning that we feel the jury could not have been misled, and that the criticism is more hypercritical than meritorious. The court did not err in the giving of the two instructions for appellee which are criticised. Appellant complains of certain remarks and statements made in the closing argument of counsel for appellee. This case seems to have been hotly contested, and while some of the remarks complained of were not altogether commendable they do not warrant a reversal of the judgment. Although the evidence was contradictory and close upon the question as to whether the parties were engaged in interstate commerce at the time of the injury, yet that was a fact to be determined by the jury who saw and heard the witnesses testify, and as there was evidence to support the verdict on that question, it will not be disturbed by this court. No reversible error appears in the record in this case, and the judgment is therefore affirmed.

*Affirmed.*